IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MERCURY LUGGAGE MANUFACTURING COMPANY, | § § § | |
| Plaintiff, | § § | Civil Action No. 3:19-cv-01939-M |
| v. | § § | |
| DOMAIN PROTECTION, LLC, | § § | |
| Defendant. | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment [ECF No. 35] and Plaintiff's Motion for Summary Judgment [ECF No. 38]. For the following reasons, Defendant's Motion is DENIED, and Plaintiff's Motion is GRANTED IN PART and DENIED IN PART.

1. **Background**

Plaintiff, Mercury Luggage Manufacturing Company, bought Seward Trunk, a luggage and trunk manufacturer, in 1998 [ECF No. 40 at App. 004]. In 2016, Advantus bought Mercury, including the SEWARD TRUNK brand, and Plaintiff became a wholly owned subsidiary of Advantus [*id*.]. In March of 2017, Advantus emailed an address listed in the registration data for sewardtrunk.com, a domain name which was initially registered in 2005, to inquire about purchasing the domain name [*id*. at App. 023, 074, 078]. An anonymized email address responded to that request, indicating that the owner would "look at a reasonable offer", and informing Plaintiff that the registrant had incurred "several thousand in out of pocket expenses related to the domain" [*id*. at App. 074, 078]. In February of 2018, Advantus registered

SEWARD TRUNK as a trademark [*id*. at App. 007, 095].  As of December of 2018, sewardtrunk.com had, on its webpage, sponsored listings for storage chests, foot lockers, canvas travel bags, and leather furniture [*id*. at App. 080-083].  As of April of 2019, Defendant, Domain Protection, LLC, was the registrant of sewardtrunk.com, under the registrar Sea Wasp, LLC, and its registration was valid through November 15, 2019 [*id*. at App. 022]; [ECF No. 41 at App. 187].  At some point after April of 2019, sewardtrunk.com's registration was renewed under a different registrar, NameSilo, LLC [ECF No. 40 at App. 026]; [ECF No. 41 at App. 187].  Its current registration expiration date is November 15, 2021 [ECF No. 40 at App. 026].  As of August 2020, sewardtrunk.com contained a link to "Seward Trunks", which showed storage trunks which were not part of the SEWARD TRUNK product line, and which do not originate from Plaintiff [*id*. at App. 019-020, 030-039].

Plaintiff claims Defendant violated the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), by its alleged bad faith registration and use of the domain name sewardtrunk.com [ECF No. 1 ¶ 1].  Defendant seeks summary judgment that the statute of limitations bars Plaintiff's claim [ECF No. 35].  Plaintiff moves for summary judgment that it has satisfied all elements of its ACPA claim [ECF No. 38].

   2. **<u>Legal Standard</u>**

Summary judgment is proper when there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Once the movant meets its initial burden to show that there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce competent evidence showing the existence of a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  The substantive law determines which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "When the

summary judgment movant will not have the burden of proof on a claim at trial, it can obtain summary judgment by pointing the court to the absence of evidence on any essential element of the nonmovant's claim." *Nunn v. State Farm Mut. Auto. Ins. Co.*, 729 F.Supp.2d 801, 805 (N.D.Tex. 2010).  A court must view all evidence in the light most favorable to the party opposing the motion.  *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1331 (Fed.Cir. 2006).

   3. **<u>Defendant's Motion for Summary Judgment</u>**

Defendant first sought a dismissal under Rule 12(b)(6) due to the statute of limitations. In its Memorandum Opinion and Order Denying Motion to Dismiss [ECF No. 16 at 2-4], this Court wrote:

> [T]he ACPA is part of the Lanham Act, which has no statute of limitations in it and which this Court has held is governed by a four-year statute of limitations when asserted in Texas. *See Tex. Int'l Prop. Assocs. v. Am. Funds Distribs., Inc.*, No. 3-07-CV-1932-M, 2008 WL 11425648, at *2 (N.D.Tex. Apr. 1, 2008) (Lynn., J., presiding); *see also Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 859 (N.D.Tex. 2009), Tex. Civ. Prac. & Rem. Code § 16.004. . . . The limitations period begins to run when a cause of action accrues, except for continuing torts, which involve conduct that creates a separate cause of action, and thus restarts the limitations period, each day it is repeated. *Bulbs 4 E. Side, Inc. v. Ricks*, 199 F. Supp. 3d 1151, 1165 (S.D.Tex. 2016) (citing *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Imp. Corp.*, 53 S.W.3d 799, 812 (Tex. App.—Austin 2001, pet. denied)) (internal quotations omitted). "Trademark infringement," which includes registration of another's mark as a domain name, "is a continuous wrong, and as such gives rise to a claim for relief as long as the infringement persists." *Id.* at 812–13 (quoting *Two Pesos, Inc. v. Gulf Ins. Co.*, 901 S.W.2d 495, 500 (Tex. App.—Houston [14th Dist.] 1995, no pet.)) (holding that the statute of limitations on a claim of trademark infringement of "Horseshoe Bay" restarted each day "horseshoebay.com" was used); *see also Bulbs*, 199 F. Supp. 3d at 1165 ("Defendant's use of Plaintiff's trademark in its Domain Name is a continuing harm"). . . . Defendant asserts that Plaintiff's ACPA claim is barred by the statute of limitations because Plaintiff filed suit fourteen years after Defendant registered the Domain. . . . However, under the continuing tort doctrine, the four-year statute of limitations restarts each day the Domain is used. . . . Thus, the statute of limitations had not run when Plaintiff filed suit, and therefore does not bar Plaintiff's ACPA claim.

Defendant argues that the four year general federal statute of limitations in 28 U.S.C. § 1658 governs Plaintiff's claim, and that thereunder, "the accrual of the cause of action occurs on the earlier of registration or use." [ECF No. 36 at 3].

The original registration of sewardtrunk.com was fourteen years prior to Plaintiff's filing, so Plaintiff's ACPA claim would be time-barred if Defendant's interpretation of the law were correct [ECF No. 40 at App. 022]. But Defendant cited no authority that applies the § 1658 limitations period to claims under 15 U.S.C. § 1125(d), and the Court has not found such authority. In denying Defendant's Motion to Dismiss, this Court found that alleged violations of 15 U.S.C. § 1125(d) are governed by the four year statute of limitations under Texas law, and that the continuing tort doctrine restarts limitations each day the domain name is used [ECF No. 16 at 4]. *Bulbs*, 199 F.Supp.3d at 1165 (finding that violations of 15 U.S.C. § 1125(d) are governed by the four year statute of limitations under Texas law, and that repeated use of a trademarked domain name is a continuous violation which restarts the limitations period at each use); *accord Guidry v. Louisiana Lighting*, 2016 WL 3127256, at *4 (E.D.La. June 3, 2016) (finding that the most analogous state statute of limitations governed, because the Lanham Act does not contain its own, and further finding that plaintiff's allegation that defendants "continue to violate the ACPA by using and maintaining the [] website" constituted an allegation of a continuous violation); *Conopco, Inc. v. Campbell Soup*, 95 F.3d 187, 191 (2d Cir. 1996) ("Because the Lanham Act establishes no limitations period for [the claims that were at issue in the case], and because there is no corresponding federal statute of limitations, we look to the most appropriate or the most analogous state statute of limitations for laches purposes.") (quotations omitted). The Court remains of the same view now. The continuing tort doctrine has prevented the running of limitations.

Defendant also argues that even if the continuing tort doctrine applies, it did not use or profit from the domain name during the four years prior to Plaintiff's filing suit. Defendant argues the uncontroverted summary judgment evidence shows that Defendant did not use the domain name at issue after August 1, 2015, which is more than four years before Plaintiff sued. Because Defendant filed an appendix with its Motion for Summary Judgment, but Plaintiff did not file an appendix with its Response, Defendant maintains its summary judgment evidence is uncontroverted.[1] However, Plaintiff provided evidence of registration and use of the domain name in the appendices attached to its own Motion for Summary Judgment. Defendant is not unfairly prejudiced by the Court's consideration of those appendices.

Plaintiff's appendices contain evidence which tends to suggest that Defendant attempted to sell the domain name in 2017, re-registered the domain name in 2019, and used the domain name in 2018 and 2020 [ECF No. 42 at 4-6]; [ECF No. 41], thereby providing proof that Defendant took actionable steps within the four years before suit. Defendant never tried to show why Plaintiff's evidence does not present a genuine issue of material fact. Defendant has failed to meet its summary judgment burden.

Defendant's Motion for Summary Judgment is therefore DENIED.

4. **Plaintiff's Motion for Summary Judgment**

Under the ACPA, a defendant is liable if it registers, traffics in, or uses a domain name which is confusingly similar to the trademark of another with "bad faith intent to profit from that mark". 15 U.S.C. § 1125(d)(1)(A). A successful ACPA claim requires satisfaction of three elements: (1) the plaintiff's mark is famous or distinctive; (2) the domain name at issue is

---

[1] The evidence referenced by Plaintiff in its Response is contained in the appendices Plaintiff attached to its own Motion for Summary Judgment [ECF No. 40, 41].

"identical or confusingly similar" to the plaintiff's mark; and (3) the individual or entity who registered the domain name "had a bad faith intent to profit from the domain name." *Emerald City Mgmt., LLC v. Kahn*, 2016 WL 98751, at *18 (E.D.Tex. Jan. 8, 2016); 15 U.S.C. § 1125(d)(1)(A); *Tex. Int'l Prop. Assocs. v. Hoerbiger Holding AG*, 624 F. Supp. 2d 582, 587 (N.D.Tex. 2009).

### a. Procedural issue: Plaintiff's Witnesses

Defendant argues that the witnesses whose evidence was provided by Plaintiff were not properly disclosed, in violation of the Federal Rules, and that Plaintiff is therefore prohibited from using evidence from those witnesses in support of its Motion for Summary Judgment. Further, Defendant argues that most of Zach Mitchell's testimony is hearsay, and that Richard Rivera, Plaintiff's counsel, is an improper witness who provides hearsay statements.

#### i. Rule 37 sanctions

Under Fed. R. Civ. Pro. 37(c)(1) "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." *BP Exploration & Production, Inc. v. Cashman Equipment Corp.*, 2016 WL 1387907, at *7 (S.D.Tex. Apr. 8, 2016). Defendant contends that Plaintiff violated Rule 26(a)(1)(A)(i) by failing to include in its initial disclosures Zach Mitchell, John Zentmyer, Richard Rivera, Heather Laude, and Kyle Jacobs, all of whom provided summary judgment evidence for Plaintiff. Rule 26(a)(1)(A)(i) requires, in relevant part, that the initial disclosure of a party contain "the name and, if known, the address and telephone number of each individual

likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses . . . ."

Plaintiff argues it complied with Rule 26(a) by disclosing a corporate representative on the topics now covered by its witnesses. Plaintiff further argues that, even if it violated Rule 26(a), the violation was harmless. In light of the topics involved, which largely relate to historical events and registrations, the disclosure of a corporate representative was sufficient under Rule 26(a). *Moore v. Computer Assocs. Int'l, Inc.*, 653 F. Supp. 2d 955, 959-60 (D.Ariz. 2009) (denying a motion to strike the affidavit of an undisclosed witness because the witness gave testimony that was "corporate in nature and could have been elicited from a number of Defendant's executives"); *Garrett v. Trans Union, L.L.C.*, 2006 WL 2850499, at *7 (S.D. Ohio Sept. 29, 2006) (allowing affidavit of corporate representative on summary judgment despite failure to specifically identify the witness).

Even if Plaintiff's failure to disclose the names of the five witnesses violated Rule 26(a), Rule 37's exception for harmless failures supports admission of Plaintiff's evidence. Four factors are analyzed when courts evaluate whether a Rule 26 violation is harmless: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003) (citing *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998)). It is Plaintiff's burden to prove that its failure to comply with Rule 26(a) was harmless. *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed.Cir. 2013). The decision of a district court on this issue is subject to review for abuse of discretion. *Harris v. Amoco Production Co.,* 768 F.2d 669, 684 (5th Cir. 1985).

A. Importance of the evidence

The evidence contained in the declarations of the five witnesses Plaintiff did not initially disclose is important to Plaintiff's Motion for Summary Judgment. The declarations and authentications of Messrs. Mitchell, Zentmyer, and Jacobs represent the entirety of the evidence cited by Plaintiff in support of its argument that the trademark SEWARD TRUNK is distinctive and famous, which is an essential element of its ACPA claim [ECF No. 39 at 2-4]; [ECF No. 40 at App. 003-017, 080-089]. Ms. Laude's declaration provides the entirety of the evidence in support of Plaintiff's contention that Defendant "trafficked in" the sewardtrunk.com name in 2017 [ECF No. 39 at 6]; [ECF No. 40 at App. 074-089]. The declarations of Messrs. Jacobs and Rivera provide the entirety of the evidence supporting Plaintiff's contention that Defendant "used" the sewardtrunk.com domain during the four years before suit was filed [ECF No. 39 at 7]; [ECF No. 40 at App. 080-083].

B. Prejudice, continuance, and justification for the delay

Plaintiff argues that the violation could not have unfairly prejudiced Defendant because the witnesses offered information that had already been disclosed in the Rule 26(a)(1)(A)(i) disclosures, and they served the primary purpose of authenticating documents disclosed in accordance with Rule 26(a)(1)(A)(ii). Plaintiff disclosed a corporate representative on the following topics and documents.

> Mercury Luggage's use and policing of its trademarks; Mercury Luggage's application for federal registration of SEWARD TRUNK mark; past communications with Domain Protection concerning sewardtrunk.com domain; historical use and fame of SEWARD TRUNK mark; contemporary use of SEWARD TRUNK mark; and other matters relating to Plaintiff's Complaint and Defendant's defenses. . . . Subjects may include Defendant's current and historic use of the sewardtrunk.com domain; facts relating to the statutory factors of bad faith included in 15 U.S.C. § 1125(d)(1)(B); the basis for any defenses asserted by Defendant; and other matters relating to Plaintiff's Complaint. . . . Mercury

8

> Luggage intends to use archived copies of the webpage hosted at sewardtrunk.com; correspondence between Mercury Luggage and Domain Protection concerning the domain sewardtrunk.com; copies of newspaper articles[,] catalogs, and other materials reflecting use, goodwill, and fame of SEWARD TRUNK mark; Plaintiff's application materials for federal registration of SEWARD TRUNK mark; and copies of webpages currently accessible from sewardtrunk.com domain.

[ECF No. 45 at 4-5]. Plaintiff advises that Defendant never served any requests for production, admission, or interrogatories, and never attempted to depose anyone from Plaintiff or Adventus, and Defendant does not dispute that. The Court finds that, under these circumstances, Plaintiff has shown that its failure to disclose the names of its corporate representatives did not result in undue prejudice to Defendant. The content of the testimony of the witnesses is entirely within the bounds of the topics and documents to which Plaintiff alerted Defendant in the initial disclosures, and about which Defendant made no effort to follow up. Because the Court finds that Defendant does not face undue prejudice if the five declarations are admitted, the Court need not consider the availability of a continuance to cure any such prejudice.

Plaintiff's explanation that it complied with Rule 26(a) by disclosing corporate representative topics, and what one or more representatives would testify to and authenticate, is satisfactory in this case. The Court finds that Plaintiff's failure to initially disclose earlier the names of the five declarants was harmless.

    ii.    <u>Mitchell testimony</u>

Defendant argues that most of Zach Mitchell's testimony should be excluded due to his lack of personal knowledge on many of the things to which he testified. Specifically, Defendant argues that Mr. Mitchell cannot possibly have personal knowledge of facts he attests to, which allegedly occurred over one hundred years, beginning in 1878. Defendant argues, mockingly,

that "a jury is not required to believe that Zach Mitchell is 143 years old", and further, objects that Mr. Mitchell is an interested party.

Mr. Mitchell, as Executive Vice President of Advantus, and as the primary person responsible for Plaintiff's SEWARD TRUNK product line, is competent to testify to the value of the SEWARD TRUNK brand, including the use, fame, and goodwill of the brand over time. A witness who acts as an agent for a corporation can present the corporation's "subjective beliefs ... as long as those beliefs are based on the collective knowledge of [the corporation's] personnel". *Brazos River Authority v. GE Ionics, Inc.,* 469 F.3d 416, 434 (5th Cir. 2006) (reversing a trial court which barred a corporate representative witness from testifying at trial based on lack of personal knowledge); *Whitehouse Hotel, LP v. C.I.R.*, 615 F.3d 321, 341-42 (5th Cir. 2010).

Mr. Mitchell testified to the history of the SEWARD TRUNK brand, including that it was acquired by Mercury Luggage, that Mercury Luggage and Seward Trunk were then acquired by Advantus, that certain items were hanging on the Seward Trunk office walls when Advantus acquired it, and that Mercury Luggage engaged in certain business activities after Advantus acquired it. All of this testimony was properly within Mr. Mitchell's role in the Plaintiff company.

Defendant also claims that Mr. Mitchell's testimony is not credible because he is an interested party. That alone is not a basis for exclusion. *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 513 (5th Cir. 1999) ("[M]erely claiming that the evidence is self-serving does not mean we cannot consider it or that it is insufficient. Much evidence is self-serving and, to an extent, conclusional."); *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 53 (1st Cir. 2000) ("[A] party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary

judgment.") (internal quotations omitted); *see C.R. Pittman Const. Co., Inc. v. Nat'l Fire Ins. Co. of Hartford*, 453 Fed.Appx. 439, 443 (5th Cir. 2011) (holding that the district court erred in disregarding affidavits on a motion for summary judgment, because, "[a]lthough arguably 'self-serving,' the affidavits are not wholly conclusory, are based on personal knowledge, and create a fact issue."); *Laird v. Sunbelt Mgmt. Co*., 2016 WL 3093979 (S.D.Miss. June 1, 2016) (finding a party's self-serving testimony, that he had lived at a particular apartment building for the six months prior to the event at issue, to be competent summary judgment evidence, even though it conflicted with all other evidence on the record regarding the party's residence) (citing *C.R. Pittman*, 453 Fed.Appx at 443).  Mitchell's testimony is essentially objective information within the scope of his work duties and knowledge, and is therefore admissible.  Fed. R. Civ. P. 56(c) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *Offshore Rental v. Louisiana Scrap International, Inc*., 2018 WL 1386694, at *3 (March 19, 2018) (considering a movant's declarations, which the non-movant alleged to be self-serving, because the declarations were based on personal knowledge and contained factual assertions) (citing *C.R. Pittman*, 453 Fed.Appx at 443).

      iii.    <u>Rivera testimony</u>

Defendant argues that the declaration of Mr. Rivera is barred as hearsay and that it is improper since he is Plaintiff's counsel.  Plaintiff argues Rivera's declaration merely authenticates documents provided to him, or that are public records.  This Court finds the Rivera declaration admissible in full.

Mr. Rivera declared the following regarding a letter he received from registrar, Sea Wasp, LLC:

> I previously represented Mercury Luggage in a uniform domain-name dispute resolution policy ("UDRP") proceeding relating to the sewardtrunk.com domain, which I filed with FORUM under the rules of the Internet Corporation for Assigned Names and Numbers. . . . The name of the registrant was anonymized in the registrar's information at the time that I filed the proceeding in April 2019 and, as a result, I filed the proceeding against a John Doe defendant. . . . The registrar, Sea Wasp, LLC, provided a letter in response to FORUM's inquiry that provided that the current registrant of the sewardtrunk.com domain as of April 9, 2019 was Domain Protection, LLC and that it could be contacted through Lisa Katz at BOX 12010, Dallas, TX. A true duplicate of this letter is attached hereto as Exhibit 1.

[ECF No. 40 at App. 018-019]. The "letter" attached as Exhibit 1 is an email chain, which contains out of court statements offered to prove that Defendant was the registrant of sewardtrunk.com. However, its contents are admissible under Federal Rule of Evidence 803(15), which creates a hearsay exception for matters "contained in a document that purports to establish or affect an interest in property if the matter stated was relevant to the document's purpose — unless later dealings with the property are inconsistent with the truth of the statement or the purport of the document." Fed. R. Evid. 803(15). The email chain is trustworthy. In April 2019, Mr. Rivera filed a complaint under the UDRP with FORUM, a dispute resolution provider accredited by the Internet Corporation for Assigned Names and Numbers [ECF No. 40 at App. 023]. Under the UDRP, the domain name registrant has an opportunity to respond before a dispute resolution panel is appointed to the case. *Uniform Domain Name Dispute Resolution Policy*, https://www.icann.org/resources/pages/policy-2012-02-25-en?routing_type=path. FORUM received Plaintiff's complaint about sewardtrunk.com, and then requested that the listed registrar confirm that it was in fact the registrar, and inform FORUM of who the registrant was [ECF No. 40 at App. 023]. Sea Wasp, LLC responded, stating that it was the registrar, and that Domain Protection, LLC was the registrant [*id*. at App. 022]. Sea Wasp, LLC provided, as

12

contact information, the name of Lisa Katz, and a PO Box, phone number, and email address for Defendant [*id.*]. Under these circumstances, the Court finds that the statements of Sea Wasp, LLC are trustworthy, and that Rivera would properly authenticate the email chain. The statements affect an interest in property – that is, who owns sewardtrunk.com. Fed. R. Evid. 803(15); *see U.S. v. Weinstock,* 863 F.Supp. 1529, 1533 (C.D. Utah 1994) (finding a list of weapons the defendant owned to be a document which "affects an interest in property"); *McCoy v. Norfolk Southern Railway Co.,* 2013 WL 12250463, at *2 n.2 (S.D.W.V. July 8, 2013) (admitting, under 803(15), a letter which confirmed that a third party had granted an easement to the plaintiff). Finally, 803(15) is satisfied because Defendant's dealings with sewardtrunk.com have not been inconsistent with Defendant being the registrant of sewardtrunk.com.

Rivera is not disqualified from giving the subject evidence merely because he is Plaintiff's counsel. "An attorney's affidavit must meet the same standards as any other person's affidavit." *In re Enron Corp. Securities, Derivative & "Erisa" Litigation*, 2003 WL 23316646, at *2 (S.D.Tex. March 27, 2003); *Sitts v. U.S.*, 811 F.2d 736, 741-42 (2d Cir. 1987) (finding the district court properly admitted a party attorney's affidavit where it was made on personal knowledge); *U.S. v. Dickson*, 2011 WL 3701839, at *1 (S.D.N.Y. Aug. 22, 2011) (allowing a party attorney's affidavit based on the attorney's personal knowledge of a video recording); *Blount v. Connecticut General Life Ins. Co*., 2002 WL 31974405, at *3 (D.Or. July 2, 2002) ("An attorney's affidavit is treated like all other affidavits pursuant to Rule 56(e) and is not sufficient unless it is based on personal knowledge."). Rivera personally navigated to sewardtrunk.com, clicked on the link "Seward Trunks", saw the secondary links that appeared, clicked on one of them, and saw that it brought up items that do not originate from Mercury Luggage. Rivera's law firm represented Plaintiff in its trademark application, so he can

13

authenticate the trademark registration application and the declaration of Kevin Carpenter which accompanied it. There is nothing improper about Rivera's summary judgment proof.

### b. Protectability of Plaintiff's mark

Mercury Luggage's federal registration of the SEWARD TRUNK mark is prima facie evidence that the mark is valid, that it is owned by Mercury Luggage, and that Mercury Luggage has the exclusive right to use it. 15 U.S.C. § 1115(a); [ECF No. 40 at App. 007]; *see also B & S Underwriters, Inc. v. Clarendon Nat. Ins. Co.*, 892 F.Supp. 815, 820 (W.D.La. 1995); *Registral.com v. Fisher Controls Intern., Inc.*, 2001 WL 34109376, at *6 (S.D.Tex. June 28, 2001) ("[F]ederal registration of a mark, including a surname, creates a presumption that the mark is distinctive."). The presumption of validity is rebuttable if a party establishes facts showing that the mark is generic or descriptive. *Vision Center v. Opticks, Inc.*, 596 F.2d 111, 119 (5th Cir. 1979) ("Although a statutory presumption of validity is accorded to marks registered under the Lanham Act, 15 U.S.C. §§ 1057(b), 1115(a), this presumption is rebuttable and may be overcome by establishing the generic or descriptive nature of the mark."). Defendant did not present any facts which would tend to show that Plaintiff's mark is generic or descriptive, and the Court knows of none. There is no dispute of material fact as to whether Plaintiff has protectable rights in the SEWARD TRUNK mark.

### c. Identical or confusingly similar

A key question here is whether "the defendant's use of the mark creates a likelihood of confusion in the minds of potential customers as to the source, affiliation, or sponsorship of the product at issue." *Board of Supervisors for Louisiana State University Agricultural and Mechanical College v. Smack Apparel*, 550 F.3d 465, 478 (5th Cir. 2008). Plaintiff must

14

demonstrate that confusion is probable. *Xtreme Lashes, LLC v. Xtended Beauty, Inc*., 576 F.3d 221, 226 (5th Cir. 2009).

SEWARD TRUNK and sewardtrunk.com are confusingly similar. In *Sporty's Farm, LLC v. Sportsman's Market, Inc*., 202 F.3d 489, 497-98 (2d Cir. 2000), a frequently-cited ACPA case, the court found that the apostrophe in Sporty's did not keep sportys.com from being confusingly similar to it, because apostrophes cannot be placed in domain names. In *E&J Gallo Winery v. Spider Webs Ltd.,* 129 F.Supp.2d 1033, 1043 (S.D.Tex. 2001), the trial court found the domain name "ernestandjuliogallo.com" confusingly similar to the "ERNEST & JULIO GALLO" mark, and the Fifth Circuit affirmed. 286 F.3d 270 (5th Cir. 2002). Here, the domain name, sewardtrunk.com, is identical to SEWARD TRUNK aside from the space between seward and trunk. Like an apostrophe, a space cannot be placed in a domain name. SEWARD TRUNK and sewardtrunk.com are confusingly similar. *See Real Estate Edge, LLC v. Campbell*, 2019 WL 830966 (W.D.Tex. Feb. 21, 2019) ("[F]ederal courts routinely recognize that domain names that are substantially the same as a trademark are confusingly similar and create a presumption of confusion.") (internal quotations omitted) (citing *US Green Bldg. Council, Inc. v. Wardell,* 2016 WL 3752964, at *6, (N.D.Tex. June 17, 2016); *Hoerbiger Holding AG*, 624 F.Supp.2d at 588; *see also People for the Ethical Treatment of Animals, Inc. v. Doughney,* 113 F.Supp.2d 915, 920 (E.D.Va. 2000); *Shields v. Zuccarini,* 89 F.Supp.2d 634, 639 (E.D.Pa. 2000); *OBH, Inc. v. Spotlight Magazine, Inc.,* 86 F.Supp.2d 176, 188 (W.D.N.Y. 2000)). There is no question of material fact on this issue, and Plaintiff is entitled to summary judgment that Defendant's domain name is confusingly similar to Plaintiff's trademark.

**d. Bad faith**

There are nine nonexhaustive factors that a court may consider in determining whether a domain name was registered with a bad faith intent to profit. *Northern Light Tech., Inc. v. Northern Lights Club,* 236 F.3d 57, 64–65 (1st Cir. 2001).

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
> (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
> (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
> (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous.

15 U.S.C. § 1125(d)(1)(B)(i). These nine "factors may be used by a court to conduct a bad faith analysis, but consideration of each and every factor is not required. The first four factors, subsections (I)-(IV), are indicative of good faith, while the last five, subsections (V)-(IX), are indicative of bad faith." *Hoerbiger Holding AG*, 624 F.Supp.2d at 589. Defendant admits that it does not have any intellectual property rights in the domain name [ECF No. 17 at

2]. There is no evidence which would suggest that seward, trunk, or sewardtrunk are names which are in any way related to Defendant. Defendant does not use the domain name in relation to any noncommercial or fair use [*id.*]. Defendant has never used sewardtrunk.com in connection with any offering of its own goods or services [*id.*]. Analysis of the first four factors reveals that none of the circumstances indicating Defendant's good faith intent are present.

Defendant stipulated that the Court should weigh the eighth factor against it [ECF No. 22]. The Court finds that Defendant has registered or acquired multiple domain names, with knowledge at the time of registration that they are identical or confusingly similar to the distinctive marks of others.

Regarding the fifth factor, sewardtrunk.com showed sponsored links to storage chests, foot lockers, canvas travel bags, and leather furniture in December of 2018 [ECF No. 40 at App. 080, 083]. However, the summary judgment evidence does not definitively show that Defendant was the registrant of sewardtrunk.com at that time. In August of 2020, the domain contained a link for "Seward Trunks", which brought up a page of storage trunks which were not part of the SEWARD TRUNK product line, and which do not originate from Plaintiff [*id.* at App. 019-020, 030-039]. Plaintiff did not definitively prove that Defendant profited from these links, although it is apparent that these links would divert people looking for products under the SEWARD TRUNK product line away from that product line. Further, Plaintiff did not definitively prove that Defendant was the registrant in August of 2020, either. Analysis of this factor certainly does not weigh in favor of Defendant, but it does raise a fact issue.

Regarding the sixth factor, Ms. Laude stated in her declaration that Plaintiff's web specialist reached out on behalf of Advantus in March of 2017 regarding the potential purchase by Advantus of the domain name [*id.* at App. 074-079]. However, it is not established by the

17

evidence that Defendant was the registrant of sewardtrunk.com at that time.  Someone responded to the email, using an anonymized email address, stating that it would "look at a reasonable offer", and informed Plaintiff that it had incurred "several thousand in out of pocket expenses related to the domain", presumably as part of calculating "a reasonable offer" [ECF App. 078]. In its Response, Defendant denies that it ever offered to sell sewardtrunk.com [ECF No. 43 at 9]; [ECF No. 46 at 9].  That is not quite a denial that the letter emanated from Defendant, but the Court believes that it creates a fact issue.  The evidence does not prove that the anonymized email was sent by or on behalf of Defendant, or that, in March 2017, Defendant was the registrant of sewardtrunk.com.

None of the factors which tend to indicate that the holder of a domain name is acting in good faith weigh in favor of Defendant, and a factor which tends to indicate bad faith weighs against it.  However, Plaintiff has not proven that sewardtrunk.com was registered to Domain Protection in March of 2017, when Plaintiff received an email indicating an openness to sell sewardtrunk.com, and Plaintiff has not established that Defendant profited, is profiting, or intended to profit from the domain name.  *Compare Virtual Works v. Volkswagen of America, Inc*., 238 F.3d 264, 271 (4th Cir. 2001) (detailing actual examples of intent to profit from the domain name, which were critical to the bad faith determination); *Sporty's*, 202 F.3d at 499 (finding a specific business motive for the bad faith registration); *Hoerbiger Holding AG*, 624 F.Supp.2d at 591 (finding that the most significant factor in the court's bad faith determination was that the domain registrant purposefully created a confusingly similar domain name to generate advertising revenue).  April 9, 2019, is the earliest point at which the uncontroverted summary judgment evidence shows Defendant as the registrant [ECF No. 40 at App. 022].  *See* [ECF No. 41 at App. 147] (Plaintiff's interrogatory 4, which was interpreted by Magistrate Judge

Horan to be "asking Defendant why it obtained the registered domain name in or around 2014" [ECF No. 34] was answered by Defendant as follows: "[D]efendant does not have records regarding the domain name in or around 2014 and does not know and cannot ascertain if it obtained the domain name in or around 2014."). The evidence that established Defendant as the registrant stated that the registration was set to expire on November 15, 2019 [*id*.]. The evidence that establishes that the registration was renewed does not establish Defendant as the current registrant [*id*. at App. 026]. Defendant presented evidence that it never offered to sell sewardtrunk.com and has never received any profit or income from sewardtrunk.com [ECF No. 45 at 2]. In total, this evidence presents a question of material fact as to whether Defendant had a bad faith intent to profit from sewardtrunk.com.

5. **Conclusion**

For the reasons stated above, Defendant's Motion for Summary Judgment is DENIED. Plaintiff's Motion for Summary Judgment is GRANTED in part, on all elements of Plaintiff's ACPA claim except for Defendant's bad faith intent to profit from the domain name, as to which there are issues of material fact.

**SO ORDERED**.

December 4, 2020.

*(signature)*
BARBARA M. G. LYNN
CHIEF JUDGE