IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MERCURY LUGGAGE                          §
MANUFACTURING COMPANY,                   §
*a Florida corporation*,                 §
                    Plaintiff,           §        No. 3:19-cv-1939-M-BN
                                         §
V.                                       §
                                         §
DOMAIN PROTECTION, LLC, *a Texas*        §
*limited liability company*, and         §
DOMAIN PROTECTION, LLC, *a*              §
*Virginia limited liability company*,    §
                    Defendants.          §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge

for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference

from Chief Judge Barbara M. G. Lynn. *See* Dkt. No. 131.

Defendants Domain Protection, LLC, a Texas limited liability company

("Domain Protection Texas") and Domain Protection, LLC, a Virginia limited liability

company ("Domain Protection Virginia"), collectively "the Domain Protection

Defendants," have each filed a Motion to Dismiss, *see* Dkts. No. 139 and 149, to which

Plaintiff Mercury Luggage Manufacturing Company, Inc. ("Mercury Luggage")

objects, *see* Dkts. No. 151 and 152. Domain Protection Texas and Domain Protection

Virginia have each filed a reply to Mercury Luggage's response to their respective

motions. *See* Dkts. No. 155 and 157.

For the reasons explained below, the undersigned recommends that the Court

deny the motions.

## Background and Procedural History

Mercury Luggage sued Domain Protection Texas in August 2019 alleging bad faith registration and use of the domain name sewardtrunk.com (the "Domain") in violation of the Anticybersquatting Consumer Protection Act 15 U.S.C. § 1125(d). *See* Dkt. No. 1. Between September 2019 and July 2020, Domain Protection Texas purportedly asserted its ability to transfer or sell the Domain to Mercury Luggage multiple times. *See* Dkt. No. 133 at 6, 9. But in January 2021, after the close of discovery, Domain Protection Texas expressly stated, purportedly for the first time, that it did not control the Domain and would be unable to transfer it to Mercury Luggage even if the Court ordered it to do so. *See* Dkt. No. 132 at 2.

Finding good cause, the Court granted Mercury Luggage's subsequent motion to continue trial and reopen discovery for 75 days to allow Mercury Luggage to attempt to identify who has owned and/or controlled the Domain since this suit was filed in 2019. *See* Dkt. No. 62. In September 2021, Mercury Luggage deposed the Domain Protection Defendants' shared manager, Lisa Katz, in her capacity as manager of Domain Protection Texas. Katz revealed during the deposition that Domain Protection Virginia held the registration for the Domain in August 2019 when the lawsuit was initiated. Based on this new information, the Court granted Mercury Luggage's motion for leave to file an amended complaint. *See* Dkt. No. 132.

On January 10, 2022, Mercury Luggage filed its Second Amended Complaint [Dkt. No. 133], bringing claims against both Domain Protection Defendants for bad faith registration and use of the Domain under the Anticybersquatting Consumer

Protection Act 15 U.S.C. § 1125(d) and for fraudulent transfer of the Domain under the Texas Uniform Fraudulent Transfer Act. On January 24, 2022, Domain Protection Texas filed its Motion to Dismiss for Failure to State a Claim [Dkt. No. 139], and, on February 3, 2022, Domain Protection Virginia filed a Motion to Dismiss for Insufficient Process and for Failure to State a Claim [Dkt. No. 149].

Domain Protection Texas also filed a Rule 72 Objection to January 6, 2022 Order Allowing Amended Complaint and Additional Parties [Dkt. No. 137] for Chief Judge Barbara M. G. Lynn's determination, and that Federal Rule of Civil Procedure 72 objection remains pending.

## Legal Standards and Analysis

## I.    The Court should deny Domain Protection Texas's Motion

### 1.    Rule 12(b)(6) Failure to State a Claim

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not

akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiffs must allege more than labels and conclusions, and, while a court must accept all of the Plaintiffs' allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id*. But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing Fed. R. Civ. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

-4-

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the [United States Court of Appeals for the] Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters

of which a court may take judicial notice"). And "[t]here is nothing improper about the district court considering the content of briefing that supports or opposes a motion under Rule 12(b)(6) when deciding such a motion," where, although "[w]hen matters outside the pleadings are presented to the court in connection with a motion under Rule 12(b)(6), the motion must be treated as a Rule 56 motion for summary judgment and appropriate notice given to the parties," the United States Court of Appeals for the Fifth Circuit has held "that briefs and oral arguments in connection with the motion ... are not considered matters outside the pleadings for purposes of conversion." *Turnage v. McConnell Techns., Inc.*, 671 F. App'x 307, 309 (5th Cir. 2016) (per curiam) (internal quotation marks and citations omitted).

    2.    *Mercury Luggage sufficiently pleads its claims under TUFTA*

Domain Protection Texas moves to dismiss Mercury Luggage's claims under the Texas Uniform Fraudulent Transfers Act, arguing that neither the parties nor the purported transfer of the Domain fall within the scope of the Act and Mercury Luggage has thus failed to state a claim for which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). The undersigned disagrees.

The Texas Uniform Fraudulent Transfer Act ("TUFTA") "aims to prevent debtors from fraudulently placing assets beyond the reach of creditors" and "operates to void certain fraudulent 'transfers,' defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money." *GE Cap. Com., Inc. v. Worthington Nat. Bank*, 754 F.3d 297, 302 (5th Cir. 2014) (citing *Challenger*

*Gaming Solutions, Inc. v. Earp*, 402 S.W.3d 290, 293 (Tex. App. – Dallas 2013)); TEX. BUS. & COMM. CODE § 24.002(12).

Under TUFTA, "a transfer made … by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made … if the debtor made the transfer … with actual intent to hinder, delay, or defraud any creditor of the debtor." TEX. BUS. & COMM. CODE § 24.005(a)(1).

To establish a claim under TUFTA, a plaintiff must prove that (1) [it] is a "creditor" with a claim against a "debtor;" (2) the debtor transferred assets after, or a short time before, the plaintiff's claim arose; and (3) the debtor made the transfer with the intent to hinder, delay, or defraud the plaintiff. *Dontos v. Vendomation NZ Ltd.*, 582 F. App'x 338, 344 (5th Cir. 2014) (per curiam) (citing *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 203-05 (Tex. App. – Hous. [1st Dist.] 2013, pet. denied)).

Domain Protection Texas argues that Mercury Luggage has failed to state a claim under TUFTA because (1) Mercury Luggage does not qualify as a "creditor" under the statute; (2) the "purported" transfer of the Domain does not fall within TUFTA's definition; and (3) Domain Protection Texas, as the alleged transferor, is not liable under TUFTA, which permits claims only against a transferee.

### i.    *Mercury Luggage sufficiently pleaded its creditor status*

Under TUFTA, a "'creditor is a person … who has a claim." TEX. BUS. & COMM. CODE § 24.002(4). A "claim" includes any "right to payment or property, whether or not the right is reduced to judgement, liquidated, unliquidated, fixed, contingent,

matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." TEX. BUS. & COMM. CODE § 24.002(3). In other words, an entity "may bring an action under [TUFTA] as a creditor of the transferor merely by virtue of a legal action, pending and unliquidated at the time of transfer, against the transferor." *Colonial Leasing Co. of New England, Inc. v. Logistics Control Group Int'l*, 762 F.2d 454, 458 (5th Cir. 1985) (citing *Hollins v. Rapid Transit Lines, Inc.*, 440 S.W.2d 57, 60 (Tex. 1969)).

The definition of "claim" gives rise to two types of TUFTA action that a creditor might bring.

First, where a creditor asserts a right to payment from the debtor – for example, because they are seeking money damages in a pending suit or a because they have received a settled judgement against the debtor – the creditor may bring a TUFTA claim to void disposal of property the transfer of which would prevent the creditor from collecting the full value of the payment owed. *See, e.g.*, *Bank of America, N.A. v. Fulcrum Enterprises, LLC*, 20 F. Supp. 3d 594 (S.D. Tex. 2014) (judgment creditor brought successful TUFTA action against transferee to void defaulting debtor's transfer of eight properties that represented substantially all of her assets).

Second, where a creditor has a claim of right to specific property owned or controlled by the debtor, the creditor may bring a TUFTA claim to void the property's transfer "to the extent necessary to satisfy the creditor's claim." TEX. BUS. & COMM. CODE § 24.008(a)(1); *see, e.g.*, *Global State Investment USA, Inc. v. LAS Properties, LLC*, 2015 WL 1943370 at *4 (D.S.C. Apr. 29, 2015) (entity that had a membership

interest in fraudulently transferred LLC was a "creditor" for purposes of bringing TUFTA claim because a membership interest is personal property under Texas law).

Domain Protection Texas asserts that Mercury Luggage has not shown that it is a creditor because it has not pleaded a qualifying right to payment or property that necessitates voiding the alleged transfer of the Domain – that is, according to Domain Protection Texas, Mercury Luggage has neither demonstrated a right to payment that cannot be satisfied without recovering the Domain nor a claim of right to the Domain itself.

Mercury Luggage responds that "to state a claim under [TUFTA, it] need only allege that it had a claim against [Domain Protection Texas] at the time that it transferred the property that is the subject of the fraudulent transfer claim" and insists that it meets this standard because, at the time of the alleged transfer, Mercury Luggage had already filed suit against Domain Protection Texas seeking damages and recovery of the Domain under the Anticybersquatting Consumer Protection Act ("ACPA"). Dkt. No. 151 at 3.

Domain Protection Texas argues in response that Mercury Luggage's ACPA claim is a statutory tort for purported wrongdoing for which transfer of the Domain is one of many possible remedies, not a claim of right to the Domain itself. *See* Dkt. No. 155 at 6.

While there is a difference between a suit seeking transfer of property as a remedy and a claim of right to the property, that distinction does not appear to apply in the TUFTA context in which a claim may exist based purely on the possibility of a

remedy. As explained above, the statute broadly defines a claim as a right to payment or property whether or not the right is reduced to judgment, unliquidated, contingent, unmatured, disputed, legal, equitable, or secured. Courts have held that, as to a "right to payment," a "'[c]laim' includes a 'disputed' right to payment that has not been reduced to judgment – i.e., a filing of a lawsuit." *Maiden Biosciences, Inc. v. Document Security Systems, Inc.*, No. 3:21-cv-327-D, 2021 WL 5416603, at *6 (N.D. Tex. Nov. 18, 2021). And courts have held that a tort claimant seeking money damages in a pending suit is a "creditor" for the purposes of bringing a fraudulent transfer action. *See Hollins v. Rapid Transit Lines, Inc.*, 440 S.W. 2d 57, 59 (Tex. 1969). And so a claimant may demonstrate a right to payment for the purposes of alleging its status as a creditor by showing that it filed an action against the debtor for which it may be awarded a remedy of money damages. By logical extension and under the plain language of the statute, a claimant may demonstrate creditor status by means of a disputed right to property by pleading that, at the time of the transfer, the claimant had a pending suit against the debtor for which the claimant may be awarded the property as a remedy.

Such is the case here. In its Second Amended Complaint, Mercury Luggage alleges that, on August 14, 2019, it filed its complaint against Domain Protection Texas seeking transfer of the Domain under the ACPA and that on December 1, 2019, Domain Protection Texas alone, or jointly with Domain Protection Virginia, transferred the Domain to a third party nominally listed as RCL Systems. *See* Dkt. No. 133 at 9.

-10-

Mercury Luggage has pleaded sufficient facts showing that it has a right to the Domain and is a creditor of Domain Protection Texas.

ii.    *Mercury Luggage sufficiently pleaded transfer*

Under TUFTA, "a transfer is made … with respect to an asset that is not real property … when the transfer is so far perfected that a creditor on a simple contract cannot acquire a judicial lien … that is superior to the interest of the transferee." TEX. BUS. & COM. CODE § 24.007(3). To survive a motion to dismiss, Mercury Luggage must have pleaded sufficient facts for this court to reasonably infer that Domain Protection Texas "dispos[ed] of or part[ed] with" the Domain. TEX. BUS. & COM. CODE § 24.002(12).

Domain Protection Texas appears to argue by implication that Mercury Luggage failed to sufficiently allege that Domain Protection Texas transferred the Domain. *See* Dkt. No. 155 at 5 ("[I]f as Mercury Luggage contends, Domain Protection did not transfer the domain name, then there can be no TUFTA claim…").

In its Second Amended Complaint, Mercury Luggage alleges the following facts regarding Domain Protection Texas's purported transfer of the Domain: Two entities, both named Domain Protection, LLC, were formed on March 11, 2014, under the laws of Texas and Virginia respectively, by Lisa Katz who served as the organizer and manager of each entity from 2014 through at least 2020. *See* Dkt. No. 133 at 3-4. "Upon information and belief, the same persons own both of the Domain Protection Defendants." *Id.* at 4. "The registrant of the Domain from at least March 1, 2018 through December 1, 2019 was listed as Domain Protection, LLC, to be contacted

through Lisa Katz at a PO Box in Dallas, Texas." *Id*. at 5." On at least two occasions in September 2019, after Mercury Luggage filed its initial complaint against Domain Protection Texas seeking recovery of the Domain, Domain Protection Texas solicited offers for Mercury Luggage to purchase the Domain. *See id*. at 6. On June 18 and November 14, 2019, one or both of the Domain Protection Defendants renewed the Domain registration, the invoices for which were sent to and paid by Lisa Katz. *See id*. On December 1, 2019, the Domain was transferred from registrar Domain Protection, LLC to a new registrar, Name Silo, LLC, and the transfer was paid for using a credit card in the name of "L Katz." *Id*. Since December 1, 2019, a seemingly unregistered entity named RCL Systems has been the nominal registrant of the Domain listed with Name Silo, with the registrant address listed as the same address as that of Domain Protection Virginia's official registered agent with the state of Virginia and the registrant phone number listed as that of the Domain Protection Defendants' shared attorney. *See id*. In April and June 2020, after the transfer to RCL Systems, Domain Protection Texas, acting through counsel that it shares with Domain Protection Virginia, "offered to resolve this matter that included an offer to sell the Domain to Mercury Luggage." *Id*. at 7, 9.

Based on these alleged facts, Mercury Luggage alleges that, after it filed its initial complaint against Domain Protection Texas, one or both of the Domain Protection Defendants transferred the Domain to RCL Systems – an entity that, to the extent it has any separate corporate existence, is under common control of the Domain Protection Defendants and is thus an "insider" – with the intent to hinder,

delay, or defraud Mercury Luggage in its recovery of the Domain or without receiving its reasonably equivalent value. *Id*. at 9-10.

Thus, contrary to Domain Protection Texas's assertion, Mercury Luggage alleges that Domain Protection Texas transferred the Domain. And, viewing the uncontested allegations in the Second Amended Complaint in the light most favorable to the nonmovant, Mercury Luggage has pleaded sufficient facts raising a plausible inference that Domain Protection Texas transferred the Domain to a distinct entity.

iii.     *Domain Protection Texas may be liable under TUFTA as a transferor*

Finally, Domain Protection Texas argues that, by "attempting to assert a TUFTA claim against Domain Protection as a <u>creditor/transferor</u>," "[Mercury Luggage] has clearly failed to state a claim upon which relief can be granted, as a TUFTA claim is a claim against the <u>transferee</u> of an asset, not the transferring creditor." Dkt. No. 155 at 2 (emphasis in the original).

As an initial matter, the undersigned reads the Second Amended Complaint as asserting a TUFTA claim against Domain Protection Texas as a debtor/transferor, not as a creditor/transferor. For the purposes of TUFTA, a "'creditor' is a person who has a claim" and a "'debtor is a person who is liable on a claim" and is generally the transferor of the property being conveyed. TEX. BUS. & COM. CODE § 24.002(4)-(5); 17 TEX. JUR. 3d Creditors' Rights and Remedies § 511. And, as discussed above, Mercury Luggage has sufficiently pleaded that it is a creditor with a pending claim for which it asserts that Domain Protection Texas is liable and that Domain Protection Texas transferred the Domain.

And the undersigned finds no support for Domain Protection Texas's assertion that a creditor may only bring a TUFTA claim against a transferee. "TUFTA allows recovery against the debtor, the transferee, or the person for whose benefit the transfer was made." *Clapper v. American Realty, Inc.*, No. . 3:14-cv-2970-D, 2015 WL 3504856, at *6 (N.D. Tex. June 3, 2015) (citing TEX. BUS. & COM. CODE §§ 24.008, 24.009); *see also Maiden Biosciences, Inc. v. Document Sec. Sys., Inc.*, No. 3:21-cv-327-D, 2021 WL 3492339, at *6 (N.D. Tex. Aug. 9, 2021) (same). As explained above, Mercury Luggage has alleged facts raising a plausible inference that Domain Protection Texas is its debtor and a transferor of the Domain.

And Mercury Luggage alleges that the Domain Protection Defendants received royalty payments from their use of the Domain and transferred the Domain to RCL Systems "such that they could still exercise control over the Domain following the transfer" while successfully "hind[erring], delay[ing], or defraud[ing] Mercury Luggage in its pursuit to recover the Domain" and damages from Domain Protection Texas. Dkt. No. 133 at 5, 10. These facts raise the plausible inference that Domain Protection Texas is a person for whose benefit the transfer was made. *See Citizens Nat. Bank of Texas v. NXS Const., Inc.*, 387 S.W.3d 74, 84 (Tex. App. – Houston [14th Dist.] 2012) ("The person for whose benefit the transfer was made may include the actual debtor or someone attempting to avoid a debt."); *see also Esse v. Empire Energy III, Ltd.*, 333 S.W.3d 166, 180-81 (Tex. App. – Houston [1st Dist.] 2010) (holding individuals were persons for whose benefit the transfer of assets was made because they were the majority shareholders of both the company fraudulently transferring

the property and the company receiving the property).

Mercury Luggage's argument that a TUFTA claim may only be brought against a transferee is unavailing and presents no basis for finding that Mercury Luggage failed to state its TUFTA claim.

The Court should deny Domain Protection Texas's motion to dismiss.

## II.    The Court should deny Domain Protection Virginia's Motion

Domain Protection Virginia moves to dismiss under Federal Rule of Civil Procedure 12(b)(4) and (b)(5) for insufficient process and Rule 12(b)(6) for failure to state a claim. Because an alleged failure to properly serve implicates this Court's jurisdiction over the Defendant, the undersigned considers these arguments first.

### 1.    *Rule 12(b)(5) Insufficient Process*

Domain Protection Virginia first moves to dismiss Mercury Luggage's Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(4)-(5) on the ground that the summons failed to comply with the requirements of Rule 4.

Federal Rule of Civil Procedure 4(a) lays out the contents of a proper summons and requires, among other things, that the summons "name the court and the parties," "be directed to the defendant," "state the time within which the defendant must appear and defend," and "notify the defendant that a failure to appear and defend will result in a default judgment against the defendant for the relief demanded in the complaint." FED. R. CIV. P. 4(a)(1). "The requirements of Rule 4 are phrased in plainly mandatory language," and a failure to issue a proper summons allows a defendant to move for dismissal based on insufficient process. *See Wells v. Ali*, 304 F.

App'x 292, 295 (5th Cir. 2008); *Coleman v. Bank of N.Y. Mellon*, 969 F. Supp. 2d 736, 744 (N.D. Tex. 2013). When process is insufficient, the Court has broad discretion to dismiss an action. *See Coleman*, 969 F. Supp. 2d at 744.

Domain Protection Virginia complains of two purported defects in the summons, asserting that it (1) fails to be "directed to the defendant" and (2) fails to provide notice that Domain Protection Virginia must appear and defend the matter within 21 days to avoid entry of a default judgment against it. Dkt. No. 149 at 2-5.

The face of the summons states that it is directed to:

Domain Protection, LLC
C/O Registered Agents, Inc., Registered Agent
4445 Corporation Lane, Suite 264
Virginia Beach, VA 23462-0000

Dkt. No. 153, Ex. A at 2. Domain Protection Virginia argues that there are two Domain Protection, LLCs named as defendants in the Second Amended Complaint and that the summons as addressed fails to distinguish on its face to which of the entities it is referring, rendering the summons fatally defective. *See id*. at 3.

Mercury Luggage responds that, on the contrary, the face of the summons makes clear it is directed to Domain Protection Virginia because it is addressed to Domain Protection, LLC care of the registered agent listed as Domain Protection Virginia's in the corporate information maintained by the Virginia Secretary of State's Corporation Commission and was in fact served on that registered agent. *See* Dkt. No. 153 at 3. And Mercury Luggage argues that there could have been no confusion about which of the Domain Protection Defendants was the subject of the summons because Domain Protection Texas has a different registered agent, Lisa

-16-

Katz, and was served its summons through that agent at her address in Dallas, Texas. *See id*. And, the summons includes the case caption from the Second Amended Complaint listing and alleging claims against both "Domain Protection, LLC, a Texas limited liability company, and Domain Protection, LLC, a Virginia limited liability company," making it clear that Domain Protection Virginia had been summoned to this Court to defend claims against it. *Id*. at 3-4.

The undersigned agrees and finds nothing to support the contention that Mercury Luggage either failed to correctly and specifically direct the summons to Domain Protection Virginia or that the summons as directed could have left any doubt for Domain Protection Virginia as to whether it was a named defendant in the Second Amended Complaint.

Second, Domain Protection Virginia argues that the summons does not, as required, state the time within which the defendant must appear and defend and notify the defendant that failure to appear and defend will result in a default judgment against it. *See* FED. R. CIV. P. 4(a)(1)(D)-(E).

The summons provides:

A lawsuit has been filed against you. Within 21 days after service of this summons on you (not counting the day you received it) . . . you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or the plaintiff's attorney ….

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer with the court.

Dkt. No. 153, Ex. A at 2. Domain Protection Virginia argues that, while the summons

instructs the defendant on when it must serve its answer on the plaintiff, it fails to state the time within which the defendant must file its answer with the Court or warn the defendant of the consequences of failing to appear and/or timely file its answer with the Court. *See* Dkt. No. 149 at 4.

As Domain Protection Virginia correctly argues, "[t]here is a fundamental difference between appearing in an action by filing an answer[] and responding to a summons by serving an answer upon the plaintiff." *Id*. And, while the absence of instruction dictating a separate deadline for filing an answer with the Court might reasonably lead a plaintiff to conclude the 21-day deadline in the first paragraph also applies to the instructions in the second paragraph, the undersigned agrees that the language could also give the impression that, while an answer must be served on the plaintiff within 21 days to avoid default judgment, there is no specific deadline for, or penalty for not, filing that same answer with the Court by the same deadline.

But, while courts have occasionally found vague or missing language in a summons in violation of Rule 4(a)(1)(D) or (E) to be a defense preventing a grant of default judgment – *see, e.g., Gill v. Nicol*, No. 4:11-CV-168 CDL, 2012 WL 1358490, at *3 (M.D. Ga. Apr. 19, 2012) (concluding default judgment was not appropriate despite defendant's failure to comply with filing deadline because summons contained vague and conflicting information) – defects in the summons are generally not a basis for dismissal unless the defects caused actual prejudice to the defendant, *see Coleman*, 969 F. Supp. 2d at 744; *see also Warfield v. Byron*, 137 F. App'x 651, 655 (5th Cir. 2005) (holding that "defects [in the summons] are not fatal if they do not

prejudice the defendant"); *May v. Texas by Cascos*, No. 5:16-cv-238-BQ, 2017 WL 7513550, at *3 (N.D. Tex. Nov. 27, 2017) ("Where a summons contains a technical defect, but that defect does not prejudice the defendant, the error is harmless and does not warrant dismissal." (cleaned up)); *Lechner v. Citimortgage, Inc.*, No. 4:09-cr-302-Y, 2009 WL 2356142, at *1 (N.D. Tex. July 29, 2009) ("[A]bsent a showing of prejudice to the defendant or evidence of flagrant disregard of the rules of procedure, 'a minor, technical error' does not justify dismissal.").

Domain Protection Virginia does not argue or indicate in any way that it was prejudiced by the purportedly defective summons.

The Court should deny Domain Protection Virginia's motion to dismiss for insufficient process under Rule 12(b)(4)-(5).

### 2.   *Rule 12(b)(6) Failure to State a Claim*

Domain Protection Virginia repeats verbatim the argument of its co-defendant Domain Protection Texas in moving for dismissal under Rule 12(b)(6), arguing that Mercury Luggage has failed to state a claim under TUFTA because (1) Mercury Luggage is not a "creditor" within the meaning of the statute; (2) the Domain was not "transferred" within TUFTA's definition; and (3) TUFTA does not permit holding Domain Protection Virginia liable as an alleged transferor.

As explained above, to establish that it is a creditor for the purposes of bringing a TUFTA action, an entity must show that it is "a person ... who has a claim," meaning "a right to payment or property." TEX. BUS. & COMM. CODE §§ 24.002(3)-(4). In its Second Amended Complaint, Mercury Luggage alleges a claim against Domain

Protection Virginia under the ACPA seeking recovery of Domain. The undersigned has already concluded that the filing of a lawsuit seeking specific property as a remedy constitutes, for the purposes of TUFTA, an assertion of a right to that property. And so Mercury Luggage has sufficiently pleaded its status as Domain Protection Virginia's creditor.

As to transfer, Domain Protection Virginia does not argue that it did not transfer the Domain, nor does it assert that the Domain was not transferred, nor does it explicitly assert that Mercury Luggage failed to sufficiently plead facts showing the Domain was transferred. Domain Protection Virginia's single line of argument related to transfer states that, "if, as Mercury Luggage contends, Domain Protection [Virginia] did not transfer the domain name, then there can be no TUFTA claim." Dkt. No. 157 at 6. But Domain Protection Virginia's argument appears to be premised on a misreading of the Second Amended Complaint, which alleges that "[t]he Domain Protection Defendants transferred the Domain in December 2019 to an insider, such that they could still exercise control over the Domain following the transfer." Dkt. No. 133 at 10.

Based on the alleged facts described above, Mercury Luggage has pleaded sufficient factual allegations raising more than mere speculation that the Domain Protection Defendants are commonly owned or controlled; that Domain Protection Virginia alone, or jointly with Domain Protection Texas, owned or controlled the Domain in September 2019 when Mercury Luggage filed this suit; and that Domain Protection Virginia alone, or jointly with Domain Protection Texas, transferred the

Domain to a third party for the purposes of hindering Mercury Luggage's ability to pursue its claim for recovery of the Domain.

Mercury Luggage has sufficiently pleaded that a "transfer" occurred within the meaning of TUFTA.

Finally, Domain Protection Virginia, without citing any support, repeats its co-defendant's claim that TUFTA claims may only be brought against a transferee. As explained above, both the text of the statute and Texas courts make clear that a TUFTA claim may additionally be brought against a debtor, transferor, or person for whose benefit the transfer was made. *See* TEX. BUS. & COM. CODE ANN. §§ 24.008, 24.009. Mercury Luggage has alleged sufficient facts showing that it has a claim against Domain Protection Virginia for recovery of the Domain; that Domain Protection Virginia alone or in concert with Domain Protection Texas transferred the Domain; and that Domain Protection Virginia, along with Domain Protection Texas, benefited from the transfer by protecting a royalty-generating asset and hindering Mercury Luggage's pursuit to recover that asset. Mercury Luggage has plausibly pleaded that Domain Protection Virginia is a debtor, transferor, and/or person who benefited from the transfer against whom Mercury Luggage may assert a TUFTA claim.

The Court should deny Domain Protection Virginia's Rule 12(b)(6) motion to dismiss.

## Conclusion

For the reasons explained above, subject to the Court's resolution of Domain

Protection Texas's Rule 72 Objection to January 6, 2022 Order Allowing Amended Complaint and Additional Parties [Dkt. No. 137], the Court should deny Defendant Domain Protection Texas's Motion to Dismiss [Dkt. No. 139] and deny Domain Protection Virginia's Motion to Dismiss [Dkt. No. 149].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 1417 (5th Cir. 1996).

DATED: August 12, 2022

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE